UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINGJUN MA,<br>Petitioner,<br>v.<br>JAMES JANECHA, et al.,<br>Respondents. | Case No. 5:26-cv-04536-PD<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**<br><br>**A# 242-409-224** |

Lingjun Ma ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking immediate release from Respondents' custody at the Adelanto ICE Processing Center in Adelanto, California. Dkt. No. 1. The Court has considered the Petition, attached declarations and exhibits, Respondents' response and exhibits, and Petitioner's reply. Dkt. Nos. 7, 8.

## I. Background

Petitioner is a native and citizen of the People's Republic of China. In her Affidavit submitted with her Petition, she states that on September 21, 2024, she was inspected and lawfully admitted to the United States on a valid

B-1/B-2 nonimmigrant visa at Los Angeles, and that she did not enter without inspection. Dkt. No. 1-6, Ma Decl. ¶ 2.

On December 12, 2024, Petitioner filed an application for asylum that includes her 13-year old son. *Id.* ¶ 3. On January 23, 2025, U.S. Citizenship and Immigration Services ("USCIS") mailed a notice to Petitioner directing her to appear for biometrics in February 2025. Dkt. No. 1-2. The notice was addressed to Petitioner in Diamond Bar, California. *Id.* In July 2025, Petitioner was granted employment authorization that is valid through July 2030. Dkt. No. 1-3 at 2. In October 2025, Petitioner was granted a social security number "valid for work only with DHS authorization." *Id.* Her asylum application is pending. Ma Decl. ¶ 5.

Previously, in September 2018, Petitioner gave birth to twins in Houston, Texas. Ma Decl. ¶ 4; Dkt. No. 1-4 (birth certificates). Petitioner states that she has "since lived together with my children, openly at a known address, worked lawfully, established community ties, and maintained a spotless record with no criminal history whatsoever."[1] Ma Decl. ¶ 4.

On June 14, 2026, Petitioner arrived on a domestic flight at Ontario Internation Airport, where ICE arrested her without a warrant, without prior notice, and without a hearing. She was transported to Adelanto, where she remains detained. Petition ¶¶ 26-30.

Petitioner requested a custody redetermination, and on August 11, 2026—almost two months after she was arrested and detained—an Immigration Judge denied bond. The order states, "Flight risk which no

[1] The record is unclear whether Petitioner claims she has lived openly at a known address since the birth of her twins in Texas in 2018, since her admission into the United States on the B-1/B-2 visa in September 2024, or since filing her asylum application in December 2024. The record also does not contain information regarding Petitioner's entry into the United States in or before 2018.

amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding." Dkt. No. 1-5.

## II. Discussion

The Petition alleges (1) violation of procedural due process, detention without pre-deprivation notice and hearing, and (2) violation of substantive due process, detention untethered to any permissible purpose. Petition ¶¶ 69-74.

Respondents state that Petitioner's July 14, 2026 detention is the first time she has been detained by ICE, and her due process claim consequently fails because she has not gained a vested liberty interest. *See* Dkt. No. 7. Regarding the bond denial, Respondents state that Petitioner has not exhausted her administrative remedies, bond orders need not reflect a reasoned explanation for the Immigration Judge's ("IJ") finding, and had Petitioner appealed the bond denial order, the IJ would have provided a memorandum setting forth the factual findings to facilitate review. *Id.* at 7 (citing Immigration Court Practice Manual, Chap. 8.3(e)(7)).

In reply, Petitioner emphasizes that she does not ask this Court to review the IJ's order denying bond. *See* Dkt. No. 8. Petitioner also argues that Respondents failed to address her due process argument. *Id.* at 4. But that is incorrect. In their Response in this action, Respondents do address Petitioner's due process claim. *See* Dkt. No. 7 at 5-6. Respondents argue that Petitioner's "due process claim fails because she has not gained a vested liberty interest", and they cite supporting caselaw. *Id.*

## III. Discussion

ICE took Petitioner into custody on June 14, 2026, upon her arrival on a domestic flight. She declares she was arrested without a warrant, notice or

any pre-deprivation process. Ma Decl. ¶ 7. In the Answer, Respondents do not identity the basis for Petitioner's arrest.[2]

Respondents acknowledge that 8 U.S.C. § 1226(a) applies to Petitioner's detention. *See* Dkt. No. 7-1 (IJ Order).

### A. Detention Under 8 U.S.C. § 1226(a)

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in this country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396–97 (2019). Section 1226 applies to noncitizens "who overstay or violate the terms of their visas." *Rodriguez-Vasquez v. Bostock*, 183 F.4th 1160, 1167 (9th Cir. 2026) (quotation omitted).

Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

DHS officers also have the authority to conduct a warrantless arrest if there is probable cause to believe a person is subject to removal and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). *See generally Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Such individuals must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and referred for a custody determination within "48 hours of the arrest" absent an emergency or other extraordinary circumstances. 8 C.F.R. § 287.3(d).

---

[2] If her arrest was based on the expiration of her visa, Respondents do not state when the visa expired or address the fact that her employment authorization is valid until July 2030.

Regardless of whether the individual is arrested pursuant to a warrant or DHS's warrantless arrest authority, DHS officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention under Section 1226(c) based on their criminal history, DHS has "the discretion either to detain the alien or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). DHS utilizes a Notice of Initial Custody Determination, Form I-286, to document its custody determinations. 8 C.F.R. § 236.1(g).

The Form I-286 includes "the formal mechanism—a box the detainee may check—to immediately request" that an Immigration Judge ("IJ") review DHS's custody determination at a custody redetermination hearing (i.e., a bond hearing). *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026). If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, an IJ will set a hearing in Immigration Court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19.

"If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id.* (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id.* (citing C.F.R. § 1003.19(e)). "The same

procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id.* The noncitizen may also seek judicial review of the immigration courts' bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz v Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022).

### B. The Constitutional Grounding for § 1226(a) Procedures

The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690–92. In the context of immigration detention, "it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (cleaned up). *See also Padilla v. United States Immigr. & Customs Enf't,* 192 F.4th 894, 914 (9th Cir. 2026) (recognizing that "the principle that the

government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century" and discussing the history of protections against arbitrary detention applied to noncitizens).

Section 1226(a) and its implementing regulations establish procedures to ensure that the Government only detains noncitizens where doing so advances its legitimate interests in preventing danger and mitigating risk of flight. Without such protections, there is an unacceptably high risk that that the noncitizen's confinement is not "reasonably related" to a legitimate purpose. *Zadvydas*, 533 U.S. at 690; *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1085 (N.D. Cal. 2025) ("Noncitizens subject to § 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody unless they pose a threat to the public or a flight risk.").

The mechanism for making such evaluations is the initial custody review, which ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis and engages "in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Kelly v. Almodovar*, No. 25-cv-6448-AT, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (quotations omitted). It also "create[s] a record that permits meaningful review of whether the required procedure occurred." *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *5 (E.D. Pa. June 17, 2026) ("A contemporaneous, individualized custody determination [ ] require[s] ICE to explain why detention, rather than release on conditions, is necessary for *this* Petitioner.") (emphasis in original).

Considering the importance of the procedures available under Section 1226(a) at the outset of an individual's detention, numerous courts have recognized failure to provide an initial custody determination is not only a

statutory violation, but also a violation of a noncitizen's due process rights. *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D. Wash. Sept. 14, 2026) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) and collecting cases). *See also Occeus v. Warden, California City Detention Facility*, No. 1:26-cv-07057-TLN-SCR, 2026 WL 2858725, at *1 (E.D. Cal. Sept. 23, 2026) ("Petitioner was denied statutory and regulatory protections under § 1226(a) and 8 C.F.R. § 1236.1(d) for a period of months in this case, which constitutes a separate procedural due process violation."); *Angulo-Barbosa v. Blanche, et al.*, No. 2:26-cv-02102-RFB-BNW, 2026 WL 2676815, at *2 (D. Nev. Sept. 11, 2026) ("the Court finds Petitioner's detention without notice of an initial custody determination violates Petitioner's right to substantive and procedural due process").

### C. Petitioner's Arrest and Detention Failed to Comply with 8 U.S.C. § 1226(a).

Petitioner declares she was arrested without a warrant, notice or any pre-deprivation process, and Respondents provided no evidence to the contrary. As stated above, Respondents do not say whether or when Petitioner's visa expired or whether visa overstay was the reason for the arrest. Respondents did not provide any evidence that there was a warrant or any basis for a warrantless arrest. Nothing in the record suggests that Petitioner would be likely to escape before a warrant could be obtained. Petitioner's asylum application was pending, she had obtained work authorization, and she was living with her minor children at an address in Diamond Bar, California, that was known to DHS when ICE arrested her as she arrived at Ontario Airport on a domestic flight. There is also no documentation that an initial custody review was conducted or that a Form-I-286 was completed. On this record, the Court concludes, consistent with

Petitioner's claim that she was arrested without a warrant, notice or any pre-deprivation process, that ICE failed to conduct a proper risk-of-escape analysis to justify a warrantless arrest, and ICE failed to provide Petitioner with an initial custody review.

On August 11, 2026, almost two months after Petitioner was detained, she received a custody redetermination. Those proceedings, however, addressed whether Petitioner's continued detention was warranted, not whether Petitioner was lawfully detained in the first instance. A number of courts have concluded that the "failure to comply with the procedures set forth by 8 U.S.C. § 1226(a) and its implementing regulations during a petitioner's initial detention renders that detention unlawful and that unlawfulness cannot be cured through belated compliance with statutory requirements." *Sanchez Marquez v. Warden*, No. 5:26-cv-05368-MBK, 2026 WL 2948874, at *6 (C.D. Cal. Oct. 1, 2026) (quoting *Zurita Navarro v. Warden*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026)); *J.T.G v. Genalo*, 26 Civ. 4521 (AT), 2026 WL 1724325, at *4 (S.D.N.Y. June 15, 2026) ("Because J.T.G.'s detention was unlawful from the outset, the government cannot cure its procedural failures by providing a custody determination three weeks later."). *See also Lopez Esteban v. Warden*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D. Wash. Sept. 14, 2024) (collecting cases). "The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Gonzalez v. Joyce*, No. 25-cv-8250-AT, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025). In this case, a bond hearing conducted almost two months after Petitioner's arrest is "'no substitute'" for initial custody determination that would have established "a lawful basis for

detention in the first instance." *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Based on the information before the Court, it appears that Petitioner's detention has been unlawful from the outset and thus the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing [her] from detention." *Reyes v. Santacruz, Jr., et al.*, No. 26-cv-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026). The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

## IV. Order

For the foregoing reasons, the Court concludes that Petitioner is entitled to habeas relief. It is therefore ORDERED that Judgment be entered granting the Petition as to Count One for the reasons set forth above, and count two is dismissed without prejudice.

Petitioner Lingjun Ma (A# 242-409-224 ) is **ordered released** within 24 hours of this Order on reasonable conditions of supervision. This Order does not provide Petitioner with blanket immunity from future detention – that relief is likely beyond the Court's jurisdiction – but any future

enforcement actions after release must comply with Due Process requirements.

At the time of release, **Respondents are ordered** to return to Petitioner any of Petitioner's personal belongings that were seized from her, including all identification, work authorization, or other official documents.

**Respondents are further ordered** to file, within three days of Petitioner's release, a status report (1) confirming Petitioner's release, and (2) the return to Petitioner of her personal belongings, including the above-listed items.

IT IS SO ORDERED.

DATE: November 17, 2026



Patricia Donahue
United States Magistrate Judge